[Civ. 13481.   Second Dist., Div. Two.   June 9, 1942.]

EDDIE MAUDE PEABODY, Appellant, v. FRANK F.
BARHAM et al., Respondents.

Stanton & Stanton and J. Marion Wright for Appellant.

Flint & MacKay, Edward L. Compton and Donald W. Hamblin for Respondents.

MOORE, P. J.—Plaintiff appeals from a judgment of nonsuit. The complaint charged that the defendants wrongfully defamed plaintiff and brought her into contempt and ridicule by publishing in the columns of a widely circulated daily the following statement: "Eddie Peabody's divorcing wife, ten years his senior, is also his aunt!" The innuendo which follows the alleged libelous words sets forth that the article referred to plaintiff's husband, Edwin Ellsworth Peabody; that by the phrase "divorcing wife" defendants intended to designate plaintiff and that by the expression "Eddie Peabody's divorcing wife . . . also his aunt" defendants intended to imply that plaintiff and her husband contracted an incestuous marriage; that the article was so understood by its readers; and that such marriage was contrary to law and therefore void. Nonsuit was granted after plaintiff had introduced her evidence.

In support of the judgment defendants submit that: (1) the publication was not libelous *per se* because it was susceptible of an innocent interpretation; (2) that if the language is not libelous *per se* no cause of action is stated because no special damages are pleaded; (3) that the court properly excluded the evidence offered in proof of special damages.

■ (1) A publication is libelous *per se* when on its face and without the aid of innuendo, it exposes a person to hatred, contempt, ridicule or obloquy or causes him to be shunned or avoided or which has a tendency to injure him in his occupation. (Civ. Code, § 45.) Whether the language used is libelous *per se* must be determined from the language itself. (*Mortensen* v. *Los Angeles Examiner*, 112 Cal. App. 194 [296 Pac. 927].) In order to determine whether it is libelous *per se* no resort may be had to any declaration as to the meaning of the words or as to the intention of their author; it must be construed apart from allegations of innuendo and inducement. (*Holway* v. *World Publishing Co.*, 171 Okla. 306 [44 P. (2d) 881]; *Kassowitz* v. *Sentinel Co.*, 226 Wis. 468 [277 N. W. 177]; *Ellsworth* v. *Martindale-Hubbell Law Directory*, 66 N. D. 578 [268 N. W. 400, 408]; *Tulsa Tribune Co.* v. *Kight*, 174 Okla. 359 [50 P. (2d) 350]; *Grand* v. *Dreyfus*, 122 Cal. 58 [54 Pac. 389]; *Noral* v. *Hearst Publications, Inc.*, 40 Cal. App. (2d) 348 [104 P. (2d) 860].) Also in determining whether a publication is libelous *per se*, its language must be given the natural and popular construction

of the average reader. (*Western Broadcast Co.,* v. *Times Mirror Co.,* 14 Cal. App. (2d) 120, 124 [57 P. (2d) 977].)

■ The offensive imputations of the article complained of by plaintiff is found in the phrases ''Eddie Peabody's divorcing wife . . . is also his aunt.'' In order to constitute these words a libel, it is necessary so to construe their meaning as to make plaintiff and her husband guilty of a crime, to wit, an incestuous marriage. To do so would require the reader to assume that the words used could have no implication other than that plaintiff was the consanguineal aunt of her husband. Also it would require the denial of the strongest of disputable presumptions that a person is innocent of crime and that the law has been obeyed. (10 Cal. Jur. p. 762.)

■ When offending language is susceptible of an innocent interpretation it is not actionable *per se.* Neither will language be given a libelous character unless such is its plain and obvious import. (*Dillard* v. *Shattuck,* 36 N. M. 202 [11 P. (2d) 543, 546].) Neither is it actionable *per se* if the offending language has more than one meaning. (*Ruble* v. *Kirkwood,* 125 Ore. 316 [266 Pac. 252]; *Manley* v. *Harer,* 73 Mont. 253 [235 Pac. 757, 759.) ■ The publication that plaintiff was the aunt of her husband is not essentially libelous for the reason that one's aunt may be consanguineal or affinitative. Certainly it is not a crime nor the breach of any sacred custom for a man to marry the widow of his consanguineal uncle. Such occurrences are not unknown in highly respectable circles. It is the exclusive function of the court to determine whether the publication is a libel *per se.* (*Mortensen* v. *Los Angeles Examiner, supra; Dauphiny* v. *Buhne,* 153 Cal. 757, 764 [96 Pac. 880, 126 Am. St. Rep. 136].)

In the instant case if the offending language on its face could have meant that plaintiff was her husband's aunt by her former marriage, then it could not have been libelous *per se.*

■ (2) Where the publication is not libelous *per se* because the language used has a covert meaning, it is for the jury, under proper pleadings and instructions, to declare the true import of the words used. (*Hearne* v. *De Young,* 119 Cal. 670, 680 [52 Pac. 150, 499].) If the words used can be by reasonable interpretation construed to be free of libelous significance, then in order to ascribe to them such character, it is necessary for plaintiff to plead by innuendo the libelous intent of the author. (*Bates* v. *Campbell,* 213 Cal.

438 [2 P. (2d) 383].) ■ In order to plead such ambiguous language into an actionable libel, however, it is incumbent upon the plaintiff also to plead an inducement, that is to say, circumstances which would indicate that the words were understood in a defamatory sense showing that the situation or opinion of the readers was such that they derived a defamatory meaning from them. (12 So. Cal. L. Rev. 225, 239-242.) But in addition to an allegation of the inducement it is also necessary for plaintiff to allege special damages by reason of the meaning gained from the publication by specifically designated parties affected by the publication with the items of losses suffered in each instance. Such names and such losses must be alleged with particularity. (*Sweeney & Co.* v. *Brown*, 249 Ky. 116 [60 S. W. (2d) 381, 384]; Note, 86 A. L. R. 848; 17 R. C. L. 391.)

■ Where the detriment suffered by plaintiff is alleged to have resulted from the estrangement of friends or in the hatred, contempt or obloquy of contemporaries, then the names of such persons so affected must be set forth in the complaint, together with the value of the losses suffered. It is a rule of ancient origin that affirmative pleadings must give the adversary party such notice of the matters to be proved as will enable him to prepare to meet them at the trial. Such matters not having been included in the complaint in the instant case, it fails to meet the requirements of the law.

■ The only reference in the complaint to damage is the allegation of general damage which declares that by reason of the publication of the "defamatory article . . . plaintiff has been by it injured in her good name, fame and reputation and has suffered damage thereby in the sum of $50,000." The only other language by which plaintiff attempted to allege facts appertaining to injuries which she might have suffered is found in the following language: "that plaintiff herein has for twelve years last past been in close contact with the public throughout the state of California and neighboring states, wherein the newspaper of said defendant Hearst Publications, Incorporated, is distributed and throughout the United States; that in her said career she has acquired a wide acquaintanceship; that plaintiff has always conducted herself with propriety. . ." These allegations utterly fail to meet the requirements for alleging special damages.

There is nothing in the complaint from which it may be fairly inferred that plaintiff suffered injury as a natural and proximate consequence of the publication complained of. (Townshend on Slander and Libel (3d ed.), §§ 146, 148.) The absence of such allegation and of the allegation of special damages renders plaintiff's complaint utterly inadequate to warrant an inquiry into the results of the publication.

In view of our conclusions with reference to the insufficiency of the pleading, it will be unnecessary to discuss the rulings of the court in excluding the testimony sought to be adduced in proof of special damages.

Judgment is affirmed.

Wood (W.J.), J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 6, 1942. Carter, J., voted for a hearing.